**HOLLAND PAGE, INC., Appellant,**

v.

**CAPITOL TRUCK AND TRAILER COMPANY, INC., Appellee.**

**No. 7648.**

Court of Civil Appeals of Texas, Beaumont.

Dec. 30, 1974.

Motion for Rehearing Overruled
Jan. 16, 1975.

---

**442**

Jack Ritter, Jr., Austin, for appellant.

Jones, Blakeslee, Minton, Burton & Fitzgerald, Austin, for appellee.

STEPHENSON, Justice.

Holland Page, Inc. (Page, Inc.) filed this suit against Capitol Truck and Trailer Company, Inc. (Capitol) for damages for lost rent from a trailer as well as for damages to the trailer. Capitol filed a cross action against Holland Page alleging that he entered into a contract with Capitol for it to repair the trailer in question, without disclosing the fact that he was acting as agent for Page, Inc. This cross action sought judgment against Holland Page and Page, Inc., on a sworn account as well as for the reasonable cost of labor and mate-

rial in repairing the trailer. Trial was before the court, and judgment was rendered for Capitol against Holland Page and Page, Inc., for $1,151.49 plus $900 attorney's fees.

According to Holland Page and Page, Inc.'s theory of this case, Capitol had agreed to repair the trailer in question by installing a used suspension system for a total cost of $450. That the trailer was to be repaired so that it could be used as a water tank to carry a load in excess of 60,000 pounds, and the suspension system installed would carry no more than 44,000 pounds and was, therefore, of no value to them. On the other hand, it is Capitol's theory of this case that it had been authorized to install a new suspension unit under the trailer for between $400 and $500 plus the cost of installation. That no one informed Capitol of an intended use requiring a suspension system to carry over 60,000 pounds.

The trial court made findings of fact which included the following: Holland Page caused this trailer to be delivered to Capitol. At the conclusion of a telephone conversation, a Capitol employee believed he had been authorized by Holland Page to install a new suspension unit for $400–$500 plus cost of installation. Holland Page believed a used unit was to be installed for a total cost of $450. Capitol installed a new unit which had been in stock for some time. The suspension system installed by Capitol was of adequate capacity for the trailer as delivered. That the reasonable value of the parts and labor supplied by Capitol in the repair of this trailer was $1,141.49. That $900 would be a reasonable attorney's fee to allow Capitol in the prosecution of its cross action. The conclusions of law filed by the trial court included: Capitol was entitled to recover the reasonable value of the parts and labor under the theory of quantum meruit or implied contract.

The primary points of error are that the evidence does not show that Holland Page

or Page, Inc., accepted the labor and material furnished, and that the evidence does not show a benefit conferred upon them. That for those reasons Capitol could not recover judgment on the basis of quantum meruit. Those points are overruled.

As shown above, the trial court allowed recovery on the theory of implied contract. Contracts are divided into two basic categories, express and implied. In an express contract, there is mutual assent of the parties in express terms, either orally or in writing. In an implied contract, the terms are not expressly stated by the parties, but are implied either in fact or in law. In contracts implied in law the element of mutual assent is missing. See 13 Tex.Jur. 2d, Contracts § 4 (1960) at 112.

Contracts implied in law, or quasi or constructive contracts, are obligations created by law on the grounds of reason and justice. Such a contract lacks the element of mutual assent and, in the true sense, is not a contract, and merely calling it a contract is legal fiction. See Id. Contracts § 6 (1960). Such is the obligation as pled, proved and found by the trial court in the case before us.

Little has been written in this State on this subject, and for that reason we quote at length from Ferrous Products Co. v. Gulf States Trading Co., 160 Tex. 399, 332 S.W.2d 310 (1960) at 311, 312.

"Mr. Corbin, On Contracts, says:

" 'A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. If this is true, it would be better not to use the word "contract" at all. Contracts are formed by expressions of assent; quasi contracts quite otherwise. The legal relations between contractors are dependent upon the interpretation of their expressions of assent; in quasi contract the relations of the parties are not dependent on such interpretation.' Vol. 1, Ch. 1, § 19, p. 38.

"And further:

" 'Why should such cases as these be classified as contracts at all, even with such qualifying modifiers as "quasi" or "implied in law"? The chief reason that they came to be so classified, both in Roman law and in the English common law, is that no other suitable and really descriptive classification was available and it was desired to make use of the remedial forms of action by which contracts were enforced * * *. So, under the head of quasi contract are included numerous odds and ends of obligation, without other pigeon holes in which to place them even though they have little in common with consensual agreement and may have great differences among themselves.' Id., pp. 40–41.

"In 17 C.J.S. Contracts § 6, pp. 322–324, we find quasi contracts defined as follows:

" 'Contracts implied in law, or * * more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity. Such contracts rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do. * * *' "

According to the findings of fact made by the trial court, the parties in this case did not enter into an express contract, because there was no mutual assent. How-

ever, we have concluded that Capitol should recover on the basis of a contract implied in law because of equity and justice.

The evidence shows that the trailer in question was of World War II vintage purchased by Holland Page as government surplus equipment. He had been in the contracting and equipment leasing business for many years and, from time to time, would buy heavy equipment, repair it, and lease it. Work was done by his employees on this trailer, converting it to a water tank, and it was leased to Latson Construction Company. The wheels were out of line and would not "track"; so, Holland Page asked that it be delivered to Capitol to be repaired. When the wheels were taken off at Capitol, it was discovered that the suspension unit needed replacing; and the telephone conversation, mentioned above, took place, with the resulting misunderstanding.

Even though the parties did not agree how the trouble would be remedied, both knew that the suspension unit needed replacing. The major misunderstanding between these parties was the cost of repair. The trial court found the reasonable value of the labor performed and parts furnished, which are supported by the evidence.

 Even though Holland Page and Page, Inc., contend the trailer as repaired is of no value to them, the trial court found otherwise, by its finding that the suspension unit was of adequate capacity for the trailer as delivered. The evidence shows that the suspension system was adequate to handle the water tank in its reduced capacity, but would not be adequate if an attachment was used to hold an additional 2,000 gallons. There is no evidence in this record that any of Capitol's employees were ever informed that a suspension system was needed which would be adequate for such additional weight. Under all of the circumstances of this case, equity requires the judgment rendered by the trial court.

 One additional point of error complains of the rendition of judgment against Holland Page, individually. As noted above, he was named in the cross action filed, but no service was had upon him. Holland Page was present in court during this trial and gave testimony. Among other things, he testified that he was President of Page, Inc., and "I own it." Later he testified that he had liquidated all of his corporations as of December 31, 1973. Then after judgment, an original motion for new trial was filed on behalf of Page, Inc., and Holland Page, complaining of the judgment against him individually, among other things. Then later, the amended motion for new trial was filed naming the same parties and making that same complaint. The order overruling the motion for new trial shows that both excepted to the action of the trial court and gave notice of appeal. Under all of these circumstances, we hold Holland Page, individually, made an appearance in this case and waived the necessity for service. Texas Rules of Civil Procedure, rule 120.

Affirmed.